USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

PERCY OCHOA,

Defendant.

---

No. 19-CR-174 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Percy Ochoa is charged in a three-count indictment with: (1) intentionally and knowingly distributing and possessing with intent to distribute crack cocaine ("count one"); (2) knowingly carrying a firearm in the commission of this offense ("count two"); and (3) knowingly possessing a firearm involved in interstate commerce after having been convicted of a felony ("count three"). Ochoa now moves to: (1) suppress the crack cocaine and firearm recovered in connection with his arrest; (2) suppress the post-arrest statements made by him to police officers; and (3) dismiss count two of the Indictment. For the following reasons, the motions are denied.

## BACKGROUND

The following facts are primarily drawn from the Criminal Complaint (the "Complaint"), Defendant's affidavit ("Affidavit") in support of his motion to suppress, and five videos that Ochoa has submitted to the Court.[1]

On January 1, 2019, at approximately 4:30 p.m., four plain-clothed police officers were on patrol in an unmarked vehicle in the Bronx, New York, when the vehicle's driver noticed Ochoa, who was carrying a backpack, walking west on 198th Street toward the Grand Concourse

---

[1] The first video ("Pole Cam Video"), which is silent, was taken by a police pole camera that shows the movements of the arresting officers' police car immediately preceding Ochoa's arrest, and the remaining four videos ("Arrest Videos 1-4"), which do contain audio, were taken by the arresting officers' body cameras during his arrest.

thoroughfare. *See* Compl. at 3. Upon spotting Ochoa, the driver stopped the car, put the vehicle in reverse, and performed a backwards partial U-turn. *See* Pole Cam Video. The officer then stopped the car in the intersection of 198th Street and Grand Concourse, in front of Ochoa but at a slight angle in relation to the street. *See* Arrest Video 1, Arrest Video 2. Although there is no video depicting precisely where the car stopped in relation to Ochoa, the Court assumes for purposes of this motion that it stopped directly in front of him. Based on video footage, however, it is evident that the car only partially impeded the crosswalk that Ochoa was attempting to cross. *See* Arrest Video 1, Arrest Video 2.

According to Ochoa's affidavit, an officer then "said something to [him] before [he] said anything," although he "do[es] not recall exactly what [the officer] said." Affidavit at 1. Ochoa does not contest that he subsequently stated the following to the officers, who remained seated in the vehicle: "You guys are going to stop me? All I have is weed. Actually, I was going to buy weed, all I have is crack." Compl. at 3. The Complaint asserts that "Ochoa then pulled down his pants and removed a bag containing 13 smaller bags of alleged crack cocaine from his buttocks," telling the officers that "this is all I got, I know you don't care about drugs." *Id.* In his affidavit, Ochoa does not deny removing the drugs from his pants, but disputes that he pulled them down in the act of retrieving the drugs. *See* Affidavit at 1. After being handed the bag of crack by Ochoa, the officers exited the vehicle, frisked Ochoa, placed him under arrest, and put him in the back of the police car. *See* Compl. at 3.

While Ochoa was handcuffed, one of the officers patted down his backpack, which he had apparently dropped on the sidewalk. *See* Video 1; Compl. at 3. The officer then felt a hard object that he believed might be a gun. *See* Compl. at 3. After feeling the object, the officer

opened the backpack and recovered a .22 caliber pistol, as well as a magazine separate from the firearm loaded with eleven bullets. *See* Compl. at 3-4.

The officers then transported Ochoa to the NYPD's 52nd precinct. *See* Compl. at 4; Arrest Video 2, Arrest Video 3. While in the vehicle, Ochoa initiated the following exchange:

| | |
|---|---|
| Ochoa: | Why y'all always stop me, man? |
| NYPD: | What do you mean? You just took crack out of your ass in front of us. |
| Ochoa: | I know y'all not worried about that. |
| NYPD: | We were sitting in the car and you took a bag of crack out of your ass. Why would you do that in front of us? |
| Ochoa: | Yeah, but I know you're not worried about that. |

Arrest Video 2; Govt.'s Opp. at 4.

The officers and Defendant arrived in the station house shortly thereafter. *See* Compl. at 4; Arrest Video 2. While in the police station's hallway, Ochoa conveyed that he was "anxious," and one of the officers responded that they were "not trying to fuck with [him]" and that he was "in [t]here for an investigation." Arrest Video 3; Def.'s Br. at 5. Ochoa was then interviewed on two separate occasions. *See* Govt.'s Opp. at 12. Only during the second of these interviews was Ochoa provided with *Miranda* warnings. *See id.*

On March 11, 2019, the Government brought a three-count indictment against Ochoa, charging him with (1) intentionally and knowingly distributing and possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) knowingly using and carrying a firearm in the commission of this offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; and (3) knowingly possessing a firearm, after having been convicted of a felony, which "had been shipped and transported" in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. 10. Ochoa subsequently pleaded not guilty. *See* Dkt. 12.

3

Ochoa filed the instant pretrial motions on May 16, 2019, *see* Dkt. 21, the Government filed its opposition on May 29, 2019, *see* Dkt. 22, and Defendant replied on June 7, 2019, *see* Dkt. 23.

On Friday, June 21, 2019, the parties appeared for a pretrial hearing, and addressed whether a suppression hearing was necessary in this case. At the hearing, defense counsel suggested that his client was prepared to submit an affidavit describing his encounter with the officers, which he subsequently filed on June 28, 2019. In full, the affidavit states that:

> On January 1, 2019, I was walking west on 198th Street towards Creston Avenue. I was going to cross Grand Concourse when I saw a car drive backwards with several police officers inside. The officers were staring at me. The car pulled into the crosswalk where I was crossing the street. The police car's windows were down and an officer said something to me before I said anything, but I do not recall exactly what he said. I was afraid and focused on being stopped and I was not focused on exactly what the officer said. I never pulled down my pants.

## DISCUSSION

Ochoa makes three separate motions. First, he argues that the drug and firearm evidence should be suppressed because he was seized by police in violation of the Fourth Amendment when they pulled their car in front of him at the intersection, which, according to Ochoa, restrained his movement and thereby conveyed to him that he was required to answer their questions. *See* Def.'s Br. at 8-9. Second, Ochoa contends that his post-arrest statements should be suppressed because the initial questioning of him occurred absent any *Miranda* warnings. *See* Def.'s Br. at 12-14. Finally, Ochoa asks the Court to dismiss count two of the Indictment because "there is nothing that establishes a nexus between the firearm and the narcotics possession charged in Count One." Def.'s Br. at 14-18.

The Court denies all three of Defendant's motions.

4

## I. The Firearm and Drug Evidence

Ochoa first argues that he was seized in violation of the Fourth Amendment when the police officers, after spotting him in their car, did a backwards u-turn, and then pulled in front of him at an intersection. Defendant contends that "[t]h[is] show of authority communicated to Mr. Ochoa that he was not free to leave and that compliance with the officers – who had just aggressively maneuvered to cut him off – was required." Def.'s Br. at 8. Because, according to Ochoa, "no probable cause or reasonable suspicion has been articulated to justify th[is] seizure, it was unlawful and its fruits must be suppressed." *Id.* at 9. Alternatively, Plaintiff requests that the Court hold a hearing because there supposedly exists materially disputed facts with respect to "what happened leading up to his arrest." *Id.*

The Fourth Amendment guarantees people the right "against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Evidence seized pursuant to an unreasonable search and seizure "must be suppressed and cannot be used in the prosecution's case in chief." *United States v. McCargo*, 464 F.3d 192, 196 (2d Cir. 2006). That said, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Rather, a seizure only takes place "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* "Otherwise, an encounter between a police officer and a citizen is consensual, and implicates no Fourth Amendment interest." *United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991).

Whether police conduct constitutes a seizure depends on "the totality of the circumstances." *United States v. Tehrani*, 49 F.3d 54, 62 (2d Cir. 1995). Specific factors that might indicate a seizure has occurred include: "the threatening presence of several officers," "the display of a weapon," "the physical touching of the person by the officer," "language or

tone indicating that compliance with the officer was compulsory," "prolonged retention of a person's personal effects," and "a request by the officer to accompany him to the police station or a police room." *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (internal citation omitted). Ultimately, the proper inquiry is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202 (2002) (internal quotation marks omitted).

The Court concludes that, assuming Ochoa's factual allegations to be true, the police officers did not seize Ochoa in violation of the Fourth Amendment in their initial encounter with him, and that a suppression hearing is thus unnecessary in this case. First, although several officers were present in the police vehicle, there is no suggestion by Ochoa in his affidavit that they threatened him with arrest or detention at that point—or even spoke to him in a commanding tone. Nor was there any requirement for the officers to advise Ochoa that he was free to leave or could refuse to answer any prospective questions. *See, e.g., United States v. Peterson*, 100 F.3d 7, 10 (2d Cir. 1996) ("For an interviewee to feel free to leave ... there is no requirement that an officer affirmatively advise him that he is free to leave or terminate the interview.") (internal quotation marks and brackets omitted). Second, none of the officers displayed their weapons or physically touched Ochoa during this initial encounter. Rather, the officers remained seated in their vehicle, and only exited it and physically restrained him after he told them that he possessed drugs and placed crack cocaine directly in front of them.

Ochoa nevertheless contends that he was seized when the officers performed an illegal u-turn, drove backwards up a block towards him, and pulled into the crosswalk where he was crossing the street. The Court disagrees. In *United States v. Thompson*, 125 F.3d 845 (2d Cir. 1997) (summary order), the Second Circuit expressly rejected the defendant's argument that he

had been seized where police officers backed up their unmarked car upon seeing the defendant, turned the vehicle around, drove on the wrong side of the street to confront him, and asked him "what was going on." *Id.* Nor was Ochoa seized because the police car partially blocked his path in the crosswalk: As evidenced by the video, a large portion of the crosswalk remained unimpeded, as did the other crosswalk and the sidewalks behind/beside him.

Indeed, Ochoa has not produced any case law in this Circuit to support the proposition that a partial obstruction of one's path constitutes a seizure. By contrast, in *Pinto-Montoya v. Mukasey*, 540 F.3d 126, 132 (2d Cir. 2008), government agents, dressed in plain clothes, blocked an airplane ramp that two individuals were walking down, "thereby restraining [their] freedom of movement," and proceeded to ask them questions. The Second Circuit nonetheless held that this did not constitute a seizure where, as here, there was no evidence that the authorities actually prevented them from leaving through either their words or physical actions. *See id.*; *see also United States v. Madison*, 936 F.2d 90, 93 (2d Cir. 1991) (denying a seizure had occurred where plain-clothed officers questioned the defendant on a bus with one officer in the seat behind the defendant and the other officer two rows in front of him, facing him, and "partially obstructing the aisle"); *United States v. Cooley*, 96 CR. 482 (DLC), 1996 WL 556943, at *2-4 (S.D.N.Y. Oct. 1, 1996) (denying a seizure had occurred where plain-clothed officers questioned the defendant on a bus with one officer standing in the row behind her and the other in the row in front of her).

In response, Ochoa principally relies on the case of *United States v. Huertas*, 864 F.3d 214, 216 (2d Cir. 2017), where police officers drove their vehicle the wrong way down a one-way street to confront the defendant, shined their spotlight on him, and began to question him. That case is inapposite, however. In *Huertas*, the court concluded that, because the defendant

7

fled from the officers immediately after they confronted him, "Huertas never 'submitted' to [the police]." *Id.* Thus, the Court expressly declined to decide whether the officers' actions constituted a seizure pursuant to the Fourth Amendment. *See id.*; *id.* ("In light of [the fact that the defendant submitted to the police and was therefore not seized], we need not consider whether the spotlighting of Huertas by a police car going the wrong way down a dark street constituted an 'assertion of authority.'").[2]

Furthermore, there is no doubt that the officers had probable cause to arrest Ochoa once he displayed the drugs to them. In his affidavit and briefing, Ochoa denies that that he pulled his pants down to retrieve the crack cocaine. *See* Affidavit at 1; Def.'s Br. at 9-10 (stating that "the body camera footage shows that Mr. Ochoa's pants were on his waist – not 'pulled down' to voluntarily display crack," as described in the Complaint). Regardless of whether he pulled down his pants to collect the crack cocaine, however, Ochoa does not challenge that he produced and "handed the bag of alleged crack" to one of the officers before they frisked and arrested him. Compl. at 3. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Indeed, immediately following his arrest, Ochoa effectively admitted that he had taken the drugs out of his buttocks. *See* Arrest Video 2 (NYPD: "You just took crack out of your ass in front of us." Ochoa: "I know y'all not worried about that." NYPD: "We were sitting in the car and you took a bag of crack out of your ass. Why would you do that in front of us?" Ochoa: "Yeah, but I know you're not worried about that.").

---

[2] Nor is Defendant's citation to the case of *Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y 2013) any more persuasive. In *Ligon*, the court cited to an NYPD training video which instructed officers that a seizure may occur where police "block[] a subject's path." *Id.* at 534. It did not address, however, under what circumstances blocking a person's path would qualify as a seizure.

8

Finally, the Court denies Ochoa's request to hold a suppression hearing with regard to his initial encounter with the police officers. According to Ochoa, such a hearing is appropriate because: (1) the officers did not simply pull alongside Ochoa, as stated in the Complaint, but "pull[ed] into the crosswalk in front of [] Ochoa, blocking his forward path," Def.'s Reply at 9, and (2) Defendant denies, contrary to the Complaint, that he pulled down his pants in order to retrieve the drugs. But the government does not challenge either of these assertions. *See* Govt.'s Opp. at 9-12; *see, e.g., United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) ("A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact.") (internal quotation marks omitted). Furthermore, the Court has assumed, with respect to this motion, that Defendant's versions of the events at issue are true, and, for the reasons just explained, nonetheless concludes that his motion to suppress fails as a matter of law. *See United States v. Washington*, No. 12 Cr. 146 (JPO), 2012 WL 5438909, at *9 (S.D.N.Y. Nov. 7, 2012) ("District courts are 'not required as a matter of law to hold an evidentiary hearing if defendant's moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested by defendant.'") (quoting *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969) (brackets omitted)).

Accordingly, Defendant's motion to suppress the physical evidence in this case and his request for a suppression hearing are denied.

## II. Defendant's Post-Arrest Statements

Defendant next contends that all of his post-arrest statements are inadmissible because his initial statements to the police officers occurred absent any *Miranda* warnings, and the statements that Ochoa made after being *Mirandized* simply repeated his prior, non-*Mirandized* remarks to the police.

9

In *Miranda*, the Supreme Court "set forth a bright-line rule that a person must be advised that he has 'the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed, before being subjected to a custodial interrogation.'" *Nova v. Bartlett*, 63 F. Supp. 2d 449, 452 (S.D.N.Y. 1999) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). That said, "[a]ny statement given freely and voluntarily without any compelling influences" cannot be said to have arisen from an interrogation, and is therefore admissible regardless of whether *Miranda* warnings were provided. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (internal quotation marks omitted). This includes statements that are spontaneous; that is, statements unprovoked by "'express questioning or its functional equivalent.'" *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011) (quoting *Rhode Island*, 446 U.S. at 300-01). *See also Taylor v. Connelly*, 18 F. Supp. 3d 242, 256 (E.D.N.Y. 2014) ("[T]he cases are uniform that the spontaneous declaration of a suspect in custody, made before the police have the opportunity to advise him of his *Miranda* rights, does not result in a *Miranda* violation.") (internal quotation marks omitted).

As an initial matter, the Government has explicitly represented that it will not introduce any statements made by Ochoa after arriving at the police station, *see* Govt.'s Opp. at 12, and, as Defendant now acknowledges, his objections against introducing these statements are therefore moot, *see* Dkt. 25, June 28, 2019 Ochoa Letter at 2.

This leaves only the post-arrest statements made by Defendant while being transported to the precinct. With respect to these statements, they cannot be said to have been provoked by "express questioning or its functional equivalent." As set forth in the Complaint and as shown in at least one of the arrest videos, it was Defendant who first began exchanging the words at issue with the officers while in the police car, asking them why they were "always stop[ping] him."

Arrest Video 2. One of the officers then responded that Ochoa had just taken "crack out of [his] ass in front of [them]," to which Defendant replied that he knew the officers were "not worried about that." *Id.* It is true that one of the officers responded to this remark by asking Ochoa why he would "do that in front of [them]," to which Ochoa answered "Yeah, but I know you're not worried about that." *Id.* This, however, was part of a colloquy that Ochoa indisputably began. In any event, even if this single follow-up question constituted a custodial interrogation, Ochoa was simply repeating his earlier admission, made spontaneously to the officers, that he was in possession of crack and had retrieved it from his buttocks. *See* Compl. at 3 (stating that all he had was "crack," and then producing the drugs to the officers while remarking that "this is all I got"); Arrest Video 2 (stating that the officers were "not worried about that" in response to the officer's comment about having pulled "crack out of [his] ass"). *See, e.g., Campaneria v. Reid*, 891 F.2d 1014, 1022 (2d Cir. 1989) (holding that, even if the defendant should have been given *Miranda* warnings before making certain statements, the authorities' failure to do so was harmless where these statements were cumulative of previous, properly admitted declarations).

Accordingly, Defendant's motion to suppress his post-arrest statements is also denied.

### III. Defendant's Motion to Dismiss Count Two

Finally, Defendant moves to dismiss count two of the Indictment. Ochoa contends that this count must be dismissed prior to trial because, "viewing a full proffer of the government's evidence, there is nothing that establishes a nexus between the firearm and the narcotics possession charged in Count One," as the government is required to prove under 8 U.S.C. § 924(c). *See* Def.'s Br. at 14; *see id.* (arguing that merely having a weapon "is insufficient to prove that [this weapon] was possessed in furtherance of [one's] drug crime") (quoting *United States v. Snow*, 462 F.3d 55, 61-63 (2d Cir. 2006) (internal quotation marks omitted)).

This motion is denied. Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Nevertheless, "it is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence." *United States v. Brown*, 321 F. Supp. 2d 598, 600 (S.D.N.Y. 2004) (internal quotation marks omitted). For an indictment to be valid, it "'need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Elson*, 968 F. Supp. 900, 904 (S.D.N.Y. 1997) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

Here, Ochoa does not deny that the Indictment is facially valid, nor does he have any grounds on which to make such a challenge. The Indictment, as well as the Complaint, tracks the precise statutory language of 18 U.S.C. § 924(c)(1)(A), and states the time and place that Defendant's alleged crime took place. *See* Indictment at 1-2; Complaint at 2-5.

Instead, Ochoa relies on the case of *United States of Alfonso*, 143 F.3d 772 (2d Cir. 1998), where the Second Circuit stated that "the sufficiency of the evidence" given in an indictment may be addressed on a pretrial motion to dismiss where the Government provides a "full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense." *Id.* at 776-77. Defendant's citation to this language is unavailing. First, it is unclear whether the Government has proffered all of the evidence that it intends to produce at trial in support of count two, especially with regard to Ochoa's alleged gang affiliation and whether he was carrying the gun in association with this gang's purported narcotics activities. *See* Compl. at 4 (stating that Defendant is a member of the Bloods street gang and "received the Firearm from a fellow member of the Bloods"); Oral Arg. at 13 (asserting that the Government's investigation of this case is

ongoing). Furthermore, the Second Circuit has made clear that the charge at issue demands "a fact-intensive" inquiry, and is thus especially "well-suited to resolution by a jury." *Snow*, 462 F.3d at 63 (internal quotation marks omitted).

Finally, even if the Government has proffered all the evidence that it intends to produce with respect to this count, it is undisputed that Defendant, when he was arrested, had a gun and a loaded magazine in a bag on his person. If Ochoa was in the act of distributing, or attempting to distribute, narcotics while in possession of these items, this alone may prove sufficient for the Government to convict him under 18 U.S.C. §§ 924(c)(1)(A). *See Snow*, 462 F.3d at 62-63 ("[A] drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself."); *see also United States v. Fraynid*, 692 Fed. App'x 659, 661 (2d Cir. 2017) ("Possession of the weapon on a drug seller's person, in circumstances suggesting that the possession was not innocent, permits ... an inference that the weapon furthered the drug transaction."); *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008) ("[T]he ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.") (internal quotation marks omitted)).

None of this, of course, precludes Defendant from contesting the sufficiency of the evidence pursuant to Rule 29 after the Government has presented its case at trial. "[B]ut a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion." *United States v. Gotti*, No. S4 02 CR 743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004). Accordingly, Defendant's motion to dismiss count two of the Indictment is denied at this time.

## CONCLUSION

For the foregoing reasons, the Defendant's pretrial motions are denied. The Clerk of

Court is respectfully directed to close the motion at docket number 21.

Dated: July 18, 2019
New York, New York

_____
Ronnie Abrams
United States District Judge